D. Ormonde Ritchie, J.
The plaintiff sues for a separation.. Her complaint alleges two causes of action, one based upon an alleged abandonment and the other upon cruel and inhuman treatment. Defendant’s answer contains a general denial of the material allegations of the complaint and two counterclaims for a separation, one upon the grounds of abandonment and the other upon cruel and inhuman treatment. Plaintiff’s reply denies any abandonment, but admits many of the acts alleged by the defendant in paragraph eighth of the answer in support *185 of his counterclaim based upon cruel and inhuman treatment and in addition thereto, sets forth an affirmative defense to both counterclaims that she was insane during the period in which all acts attributable to her in said counterclaim were alleged to have occurred.
At the commencement of the trial, the plaintiff withdrew her cause of action based upon cruel and inhuman treatment and elected to proceed upon the theory of abandonment only.
In the interests of orderly procedure, the defendant’s cause of action pleaded in his counterclaims will be first discussed.
After a review of the evidence, the following facts are found to have been established.
The plaintiff and defendant were married on June 18, 1947.
There are two children of the marriage, namely, Steven and Craig of the ages of nine and four years respectively.
The plaintiff left the home of the parties at West Hempstead, New York, on or about July 2, 1957, and never returned to live in said home.
That between the Spring of 1953 and July 2, 1957, plaintiff continually embarrassed the defendant by informing their friends and neighbors that he beat her up and abused her. That such charges were baseless.
That during the period aforesaid, the plaintiff neglected her children and her household duties. On many occasions she threw objects at the defendant and spat at him; became a heavy drinker and ofttimes became intoxicated; repeatedly awakened him at night and disturbed his sleep without cause, squandered large sums of money on clothing at times when she had an adequate wardrobe; incurred excessive bills for the rental of chauffeur-driven Cadillac automobiles to transport her about at a time when the defendant had made a car available for her use, and on one occasion in May, 1957, she accused the defendant of having assaulted her and caused him to be arrested, although such charge was untrue.
Under ordinary circumstances, the incidents detailed above would be sufficient to establish the defendant’s counterclaim based upon abandonment and might be sufficient to establish cruel and inhuman treatment. However, the plaintiff has raised the defense of insanity as previously stated. -
Insanity is a defense to an action for separation on the grounds of cruel and inhuman treatment and/or abandonment if at the time the alleged acts were committed the plaintiff or defendant, as the case may be, was laboring under such a defect of reason as not to know the nature of his or her acts or that they were wrong. Cruelty, in its meaning, contains the atmosphere of *186 wantonness, of intent to inflict suffering with deliberateness. So, too, abandonment presupposes intent, namely, the departure of one spouse from the other without justification and the intention of not returning. Thus, if the plaintiff’s condition was such that she could not distinguish between right and wrong at the time the alleged acts attributed to her were committed, then she was incapable of forming any wrongful intent. I find such to be the case. Having established her defense, it constitutes a complete bar to the counterclaims asserted by the defendant. The counterclaims are dismissed.
Now, as to the plaintiff’s cause of action based upon an alleged abandonment. It appears that the plaintiff left the marital home on July 2, 1957, and appeared the next day with a process server for the purpose of serving the defendant with a summons and complaint in the instant action.. That thereafter she roamed about the countryside and particularly in the neighborhood where the children of the marriage were at camp. Eventually she came to the attention of the camp director, who notified the defendant of her whereabouts and her appearance and condition and advised that the defendant come and pick her up. The defendant referred the camp director to the plaintiff’s father, who went to where she was and brought her to his home, and sometime in early August, 1957, she went to the West Hills Sanitarium, where she stayed under the care of a psychiatrist, except for an interval of about one week, until October 27, 1957, when she was discharged. All evidence of psychotic manifestations disappeared some time in November, 1957, at which time it would appear that she was ready to resume her place in society. However, she continued treatment by a psychiatrist down to the time of this trial. After October 27, 1957, she stayed with her parents for a few days and then obtained living quarters in Manhattan, where she secured a job early in November, 1957, and worked down to the time of the trial. During the last-mentioned period, she made numerous visits to New Jersey to see her children at the present home of the defendant.
Normally, the court would say that a duty devolved upon the defendant by virtue of the marriage relationship and his knowledge that she was mentally ill, to go to the country and bring her back to the marital home and provide her with the psychiatric treatment necessary to restore her to good mental health, and for a neglect to do this, the defendant might be deemed to have abandoned the plaintiff. But here he had been served with process in the separation action prior to her departure from the marital home, and despite his knowledge that *187 her actions for a long period of time had not been altogether those of a normal person, nevertheless as a layman, he was not bound to know that she was laboring under such a defect of reason as not to know the nature of her acts or that they were wrong. As a consequence, he had reasonable grounds to assume, by virtue of having been served with the summons and complaint in the separation action and the fact that she had been consulting attorneys and had been talking about a divorce for some time prior to her leaving the home, that she fully intended to obtain a separation from him and that therefore he owed her no further duty to live with her and support her.
The evidence further shows that at no time subsequent to her restoration to sanity did the plaintiff ever offer to return to the marital home of the defendant, although she had ample time and the opportunity to discuss the matter with the defendant. She did not amend her complaint to include the cause of of action for a separation upon the ground of abandonment until December, 1957, which was some time after her psychotic manifestations had disappeared. Furthermore, she made repeated visits to the defendant’s home to see the children, at which time she could have broached the subject of her return. The court feels that inasmuch as she has pressed this action and is seeking substantial support from the defendant, that she owed him a duty to afford him the opportunity to take her back and resume the marriage relationship. In the light of the foregoing, the court is convinced that her failure to discharge this duty defeats her right to a separation upon the grounds of abandonment, and accordingly her complaint is dismissed.
Custody of the children of the marriage is awarded to the defendant. They are being well taken care of by him and he is best equipped to provide for them. Plaintiff has neither the means nor adequate accommodations to properly take care of them. However, the plaintiff will be allowed broad rights of visitation. It is suggested that the parties agree on the times and place of visits, and in the event they do not do so, the court will fix the same in the judgment.
No further counsel fees will be allowed.
Judgment is directed to be entered in favor of the defendant dismissing the complaint upon the merits and in favor of the plaintiff dismissing the counterclaims upon the merits.
The foregoing is the decision of the court in accordance with section 440 of the Civil Practice Act.
Submit judgment thereon.